IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMMY ROY KEETON,

        Plaintiff,                 No. CIV S-06-1094 GEB CKD P

  vs.

COX, et al.,

        Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the original complaint filed May 19, 2006, specifically the sole remaining claim that defendant Ramirez used excessive force against plaintiff in violation of the Eighth Amendment. (See Dkt. Nos. 31, 33.) Pending before the court is defendant's June 23, 2011 motion for summary judgment. On July 12, 2011, plaintiff filed an opposition. For the following reasons, the court recommends that defendant's motion be granted.

II. Summary Judgment Standards Under Rule 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 12, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

III. Discussion

A. Legal Standard

Plaintiff alleges that on May 15, 2002, while he was housed at the California Medical Facility in Vacaville, CA, defendant Ramirez escorted plaintiff back to his cell after a visit to plaintiff's counselor and then asked plaintiff to put his hands outside the food slot so Ramirez could remove the handcuffs. Plaintiff protested that he could not, as he had previously sustained an injury to his wrist on April 26. 2002. Ramirez allegedly cursed at plaintiff, grabbed the handcuffs, and yanked plaintiff against the cell door. Ramirez removed the left handcuff, but twisted the right handcuff against plaintiff's injured wrist. Plaintiff alleges that Ramirez's use of force exacerbated his wrist injury. (Dkt. No. 1 at 9-16; see Dkt. No. 31 at 2-3 (summarizing allegations)).

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitely v. Albers, 475 U.S. 312, 319 (1986). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins v. Gaddy, ––– U.S. –––, –––, 130 S.Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9, (1992)) (internal quotations omitted).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. As the Supreme Court recently explained in Wilkins:

> The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' . . . This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. '[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation.' The extent of injury may also provide some indication of the amount of force

4

> applied.
>
> . . .
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury. Accordingly, the Court concluded in Hudson that the supposedly 'minor' nature of the injuries 'provide[d] no basis for dismissal of [Hudson's] § 1983 claim' because 'the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not de minimis for Eighth Amendment purposes.' 503 U.S. at 10.

130 S.Ct. at 1178-1179 (some internal citations omitted).

B.  Factual Background

Plaintiff and defendant give largely similar accounts of the incident giving rise to this complaint. The main difference is that plaintiff contends that defendant intentionally caused pain to plaintiff's injured wrist while removing plaintiff's right handcuff.

In his declaration submitted in support of the summary judgment motion, defendant Ramirez states that, prior to the alleged incident on May 15, 2002, plaintiff had been placed in handcuffs in accordance with institutional procedures and removed from his cell for an interview by his counselor. (Dkt. No. 59-4 (hereinafter "Ramirez Decl.") at ¶ 6.) When the interview was over, Ramirez escorted plaintiff back to his cell. (Id. at ¶ 7.) After removing plaintiff's left handcuff, Ramirez proceeded to remove the right handcuff through the food port opening. (Id. at ¶¶ 8-9.) As he was doing so, plaintiff attempted to pull away from his grasp. (Id. at ¶ 9.) Ramirez ordered plaintiff several times to stop, while maintaining control of the handcuffs, but plaintiff continued to pull against Ramirez's hold on the handcuffs. (Id. at ¶¶ 10-11.) Plaintiff "then grabbed an unaltered State issued razor from the shelf within his cell, turned aggressively toward the cell door, reached outside of the food port, and attempted to slash my arms and hand through the open food port." (Id. at ¶ 12.) Another correctional officer, Officer Behler, discharged pepper spray into the cell, striking plaintiff in the upper torso. (Id. at ¶ 13.)

Ramirez released his grasp of plaintiff's right wrist, closed the food port and activated his personal alarm. (Id. at ¶ 14.) A third correctional officer, Sergeant Tatum, responded to the alarm, and plaintiff was handcuffed and removed from the cell. (Id. at ¶¶ 15-16.) Plaintiff was taken to a clinic for medical evaluation and pepper spray exposure decontamination, then re-housed in Administrative Segregation without further incident. (Id. at ¶¶ 17-18.)

Defendant Ramirez states that "[t]he threat posed by Plaintiff's refusal to allow the removal of his right handcuff and his use of a weapon was reasonably perceived by myself and Officer Behler as a threat to our safety. I tempered the severity of my response by maintaining control of Plaintiff's handcuffs while O.C. pepper spray was used by Officer Behler. Under these circumstances, the minimal physical force used was the amount necessary to gain control of Plaintiff for the purposes of maintaining order and restoring discipline." (Id. at ¶¶ 21-23.) Plaintiff complained of pain to his right wrist as a result of the incident. (Id. at ¶ 24.) A medical report was completed detailing plaintiff's complaint, and an x-ray was taken of his right wrist. (Id. at ¶ 25.) However, "the extent of Plaintiff's injury to his right wrist was undetermined at the time of the incident." (Id. at ¶ 26.)

Officer Behler's declaration in support of the summary judgment motion corroborates defendant Ramirez's account. (Doc. No. 59-4.) Behler states that he was present when Ramirez escorted plaintiff to his cell. He states that plaintiff tried to pull away from Ramirez's grasp as Ramirez was removing the right handcuff, and kept pulling away as Ramirez "ordered Plaintiff several times to stop moving." (Id. at ¶¶ 8-9.) Behler states that Ramirez released his grasp of plaintiff's right wrist only after plaintiff, who had attempted to slash Ramirez's arms and hands with a razor, was sprayed with pepper spray by Behler. (Id. at ¶¶ 11-13.)

In his opposition to summary judgment, plaintiff concedes that, as defendant Ramirez was removing plaintiff's right handcuff, plaintiff tried to pull away from his grasp. (Opp. at 3, 4.) Plaintiff states that he did so "involuntarily" because "his right wrist was injured

6

and very tender to the touch" due to being injured a few weeks earlier. (Id. at 3, 6.) Plaintiff states that Ramirez was using the handcuff "as a weapon" by pulling and twisting it until plaintiff "crie[d] out in pain." (Id. at 7.) Plaintiff states that he was "not aware of C/O Ramirez's commands to stop," only that "his wrist was being pulled and twisted and that excruciating pain was shooting through his wrist." (Id.) Plaintiff acknowledges that he "did grab an 'unaltered' state issue razor from his shelf within his cell and did turn aggressively towards C/O Ramirez." (Id. at 4.) However he disputes that he attempted to slash Ramirez's hands and arms through the open food port. He contends that an "unaltered" razor is encased in plastic and thus cannot be used to slash anyone. (Id. at 4-5.) Plaintiff states that "[t]he aggressive gesture that was made toward C/O Ramirez was the equivalent of a scare tactic . . . Anything to get the defendant from pulling and twisting my wrist" in a way that plaintiff describes as "malicious" and "sadistic." (Id. at 5.) Plaintiff states that, after he picked up a razor, Ramirez released his right wrist, closed the food port, and pressed his personal alarm, "but not before afflicting great bodily injury" on plaintiff's wrist. (Id. at 5.)

Pertinent here are medical records concerning plaintiff's right wrist both before and after the May 15, 2002 incident. In support of his motion, defendant has submitted an April 30, 2002 radiology report describing an x-ray of plaintiff's right wrist. In the report, a Dr. Schultz stated: "There is a fracture through the waist of the scaphoid bone."[1] (Dkt. No. 59-5 at 6.) On May 15, 2002, a "medical report of injury or unusual occurrence" was completed that summarized plaintiff's statements as follows: "Rt wrist pain that severly [sic] increased when pulled through the food slot while in cuffs. Was sprayed with OC." (Id. at 7.) Plaintiff's right wrist was again x-rayed on May 15, 2002, and the resulting radiology report concluded:

---

[1] "The scaphoid is one of the small bones in the wrist. It is the wrist bone that is most likely to break. The scaphoid is located on the thumb side of the wrist, in the area where the wrist bends." American Academy of Orthopaedic Surgeons, at http://orthoinfo.aaos.org/topic.cfm?topic=A00012 (Last accessed August 17, 2011).

1  "Findings consistent with an old fracture of the distal navicular.[2]  Somewhat unusual appearance
2  of the lunate is noted, but I do not believe a dislocation or subluxation is present . Clinical
3  correlation is recommended.  No definite changes have occurred since 4/29/02."  (Id. at 8.)
4         Plaintiff has submitted a medical record dated May 17, 2002, stating that plaintiff
5  "has a nondisplaced fracture of the right carpal navicular" and "is authorized to have a rigid wrist
6  splint for two months[.]"  (Opp., Ex. A.)
7  C.  Analysis
8         Defendant moves for summary judgment on the grounds that his use of force was
9  de minimis and proportional to plaintiff's refusal to comply with instructions during the removal
10 of his right handcuff.  Defendant also contends that, because plaintiff suffered no discernible
11 injury to his wrist, he fails to state an Eighth Amendment excessive force claim.
12        The court finds both arguments persuasive.  Drawing all reasonable inferences in
13 favor of plaintiff, the court assumes that defendant did – either intentionally or unintentionally –
14 cause great pain to plaintiff's injured right wrist when he began to remove plaintiff's right
15 handcuff.  The court further assumes that this is why plaintiff attempted to free his right hand by
16 pulling away.  Even so, the fact that defendant continued to maintain control of the handcuffs
17 while plaintiff tried to pull away is clearly a proportional use of force.  Once plaintiff grabbed a
18 razor with his left hand and moved aggressively toward defendant as a "scare tactic," defendant's
19 use of force to control plaintiff's right hand was even more justified, whether or not such force
20 caused pain to plaintiff's injured wrist.  In sum, regardless of what happened in the initial
21 moments of defendant's attempt to remove the right handcuff, the situation very quickly became
22 one in which defendant's use of force "was applied in a good-faith effort to maintain or restore
23 discipline."  Wilkins, 130 S.Ct. at 1178.

---

[2] An online medical source states that the scaphoid bone is "also known as the navicular bone."  University of Wisconsin School of Medicine and Public Health, http://www.uwhealth.org/sports-medicine/scaphoid-navicular-fractures-of-the-hand-and-wrist/11483 (Last accessed August 17, 2011.)

Moreover, an x-ray taken on the day of the incident does not support plaintiff's claim that defendant's actions exacerbated his wrist injury. Rather, the condition of plaintiff's wrist was "consistent with an old fracture," and the report concluded that "no definite changes have occurred since" plaintiff's last x-ray. While Wilkins does not require "a certain quantum of injury" to state an excessive force claim, it would seem to require more than fleeting pain, caused by pressure on a previously-injured wrist, and unaccompanied by any discernible injury. This conclusion seems especially warranted where plaintiff chose to strenuously resist control, causing more pressure on his injured wrist than would have otherwise been necessary.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's June 23, 2011 motion for summary judgment (Doc. No. 59) be granted and this action closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 22, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
keet1094.sj